NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |
|---|---|
| VICTOR MERLO, GEORGE BOBENKO, RAYMOND FUNDORA, JEFFREY SUSHKO, and JUAN HERNANDEZ, on behalf of themselves and others similarly situated, | Hon. Garrett E. Brown, Jr. |
| Plaintiffs, | Civil Action No. 07-4311 |
| v. | **MEMORANDUM OPINION** |
| FEDERAL EXPRESS CORPORATION, d/b/a FEDEX EXPRESS, FEDERAL EXPRESS, JOHN DOES (1–50), fictitiously named individuals, ABC CORPORATIONS (1–50), fictitiously named business entities, | |
| Defendants. | |

---

**BROWN, Chief Judge:**

This matter[1] comes before the Court upon Plaintiffs' motion for class certification (Doc. No. 39) and Defendants' motions seeking partial summary judgment and denial of class certification on the grounds of issue preclusion (Doc. Nos. 41, 42). For the following reasons, the Court will deny Plaintiffs' motion for class certification, and the Court will grant in part Defendants' motion for partial summary judgment.

I.     BACKGROUND

*A. Factual Background*

Plaintiffs Victor Merlo, George Bobenko, Raymond Fundora, Jeffrey Sushko, and Juan

---

[1]This matter was reassigned to the undersigned by Order of August 10, 2009.

1

Hernandez bring this action on behalf of a putative class of all New Jersey-based couriers[2] employed by Defendant Federal Express Corporation ("FedEx") between 2000 and 2006. Plaintiffs allege that FedEx violated New Jersey statutory, regulatory, and contract law by requiring couriers to perform unpaid preliminary work between their arrival at the station and their scheduled start time.

FedEx couriers are paid on the basis of hourly rates, and it is undisputed that FedEx requires its couriers to maintain two sets of daily time records: timecards, which couriers manually stamp at a timeclock when they arrive at the station, and electronic notepads called "Trackers," which couriers use to report their work activities for the day.  It is undisputed that FedEx paid wages solely on the basis of couriers' Tracker entries.  (Fitzsimmons Decl., Ex. A (Carlson Decl.) ¶ 8.)  According to Plaintiffs, prior to April 1, 2006,[3] FedEx systematically encouraged and/or required couriers to perform preliminary work during the gap time between clocking in at the station and logging their first entry on their respective Trackers at their scheduled start time.  Such preliminary work included gathering personal supplies such as the clipboard and backbelt, inspecting uniforms and personal appearance, picking up the daily manifest, picking up work supplies such as the Tracker, and recording additional information on timecards.  (*See* Pls.' Class Cert. Reply Br. Exs. C, G.)  Because FedEx based payment on the Tracker entries and not the manual timecards, Plaintiffs contend that FedEx required couriers to

---

[2]Plaintiffs aver that this putative class encompasses approximately 8,400 employees. (Compl. ¶ 35(A).)

[3]Plaintiffs contend that FedEx changed its timekeeping policy on April 1, 2006, following a settlement with California-based couriers.  According to Plaintiffs, the new policy compensates couriers for "prep time," which is the five minutes after manual punch-in before their first scheduled work activity.

perform unpaid work.[4]

Plaintiffs filed suit in the Superior Court of New Jersey, Middlesex County, and FedEx removed the matter to federal court pursuant to the Class Action Fairness Act of 2005. Plaintiffs' Complaint presents four counts, consisting of claims that FedEx: (1) violated the New Jersey Wage and Hour Law's (WHL) minimum wage provision, N.J. Stat. Ann. § 34:11-56(a)(4), and its implementing regulations by failing to pay Plaintiffs for all hours worked; (2) breached express and/or implied contracts to "pay Plaintiffs for regular and overtime hours worked as prescribed by New Jersey Law"; (3) breached the implied covenant of good faith and fair dealing; and (4) was unjustly enriched by these policies.

### B. Class Certification Cross-Motions

Plaintiffs and FedEx now cross-move for and against class certification. In their motion seeking class certification, Plaintiffs assert that their putative class satisfies the numerosity, commonality, typicality, and adequacy requirements for certification under Federal Rule of Civil Procedure 23(a), and that common questions of law and fact predominate over individual considerations, rendering class litigation a superior method of adjudication for purposes of Federal Rule 23(b)(3). With regard to common questions of law and fact, Plaintiffs contend that they can prove FedEx breached WHL and contractual requirements to pay couriers for all hours worked, because FedEx training materials instructed couriers to perform various preliminary activities during the gap time between arrival and the first Tracker entry. Beginning with this common proof, Plaintiffs further submit that 49 C.F.R. § 395.2, a regulation promulgated by the

---

[4]In their Complaint, Plaintiffs also alleged that FedEx had policies requiring couriers to perform after-shift and split-shift work without compensation. Plaintiffs do not presently rely on these allegations to advance their positions on the present motions.

Federal Motor Carrier Safety Administration of the U.S. Department of Transportation (hereinafter "DOT regulation"), provides a common legal standard for their WHL claim, which alleges that couriers were not "paid for all hours worked," in violation of N.J. Admin. Code § 12:56-5.1.   The Administrative Code at § 12:56-5.2 defines "hours worked" to include "[a]ll the time the employee is required to be at his or her place of work or on duty."   Plaintiffs argue that, for the particular facts of this case, the DOT regulation's definition of "On-duty time" supplies the relevant standard for determining whether a courier was required to be "on duty" for purposes of § 12:56-5.2 and, hence, performed uncompensated work in violation of § 12:56-5.1. The DOT regulation defines "On-duty time" as "[a]ll time from the time a driver . . . is required to be in readiness to work until the time the driver is relieved from work," which includes "[a]ll time at a plant, terminal, facility, or other property of a motor carrier or shipper, or on any public property, waiting to be dispatched."   As for quantifying the damages from this common injury, Plaintiffs submit that the Court may compare the actual clock-in times of FedEx couriers with their scheduled start times to determine the amount of "off-the-clock" work performed.   When viewed together, Plaintiffs argument asserts that the common proof of FedEx's gap-time preliminary work policy, when viewed in the context of the WHL regulation's definition of "hours worked" and the DOT regulation's definition of "On-duty time," establishes a § 12:56-5.1 violation and permits the Court to determine unpaid wages via the common proof of couriers' timecards.[5]   Plaintiffs also submit that a California state court certified a statewide class of

_____

[5]Although it is not entirely clear from their briefs, Plaintiffs appear to rely on this theory of common proof for both their WHL and contract claims, which suggests that Plaintiffs believe their employment contracts incorporated the DOT regulation's definition of "On-duty time."

FedEx's California couriers who were alleging similar injuries.[6]

FedEx cross-moves to deny class certification on the grounds of issue preclusion, arguing that federal courts in the Eleventh Circuit have already denied certification of nationwide and statewide classes of hourly FedEx employees alleging substantially the same injuries—that FedEx required its employees to perform unpaid work during the gap time between clocking in and registering their start time on their Trackers.  *See Clausnitzer v. Federal Express Corp.*, 248 F.R.D. 647, 658–63 (S.D. Fla. 2008) (denying certification of nationwide class alleging contract and quantum meruit claims); *Babineau v. Federal Express Corp.*, 576 F.3d 1183, 1191–95 (11th Cir. 2009) (affirming district court's denial of statewide class alleging contract and quantum meruit claims).  Alternatively, FedEx opposes Plaintiffs' Rule 23(b)(3) predominance contentions, arguing that the federal DOT regulation has no bearing on New Jersey wage laws and, thus, the Court would have to conduct individualized inquiries for each courier to determine whether they were required to perform unpaid work.  Specifically, FedEx points to the deposition testimony of named Plaintiffs indicating that they were never instructed to arrive at their station and/or do work prior to their scheduled shifts.  (*See* Fitzsimmons Decl., Ex. B (Sushko Dep.) at 42, 47; Ex. C (Fundora Dep.) at 83, 127; Ex. D (Hernandez Dep.) at 25, 34; Ex. F (Merlo Dep.) at 48; Ex. E (Bobenko Dep.) at 47.)  FedEx also points to deposition testimony of putative class

---

[6]Plaintiffs identify this case as *Foster v. FedEx*, Case No. BC 28230 (Cal. Sup. Ct.), but they do not provide a copy of the certification decision, and this Court has not been able to locate a copy through public databases.  However, a federal court in the Southern District of Florida, in denying certification of a nationwide class of FedEx hourly employees alleging that FedEx required them to perform unpaid work, distinguished *Foster* on the grounds that the plaintiffs in that case had presented evidence that FedEx managers had altered employees' time records. *Clausnitzer v. Federal Express Corp.*, 248 F.R.D. 647, 653 (S.D. Fla. 2008).  Because Plaintiffs in this case do not cite *Foster* for any specific conclusions other than the final class certification result, the Court finds that *Foster* is of minimal value to the present inquiry.

members (i.e. New Jersey-based FedEx couriers during putative class period) indicating that couriers' early arrival was voluntary, and that many couriers did not perform work during the gap time between arrival and shift start times.  (*E.g.*, Fitzsimmons Decl., Ex. G (Dalzell Decl.) ¶ 8; Ex. H (McKay Decl.) ¶¶ 7–8.)

This evidence, FedEx claims, demonstrates that whether an individual FedEx courier was required to perform unpaid work, and how much unpaid work a given courier performed, depends on the individual circumstances, which necessitates an individualized inquiry.  The predominance of these individualized inquiries, FedEx contends, has led courts, including the *Clausnitzer* and *Babineau* courts in the context of FedEx employees alleging the same injury as the present Plaintiffs, to determine that a class action would be impracticable for determining wages owed for unpaid work.  *See Clausnitzer*, 248 F.R.D. at 661–62; *Babineau*, 576 F.3d at 1193–95.

### C.  FedEx's Motion for Partial Summary Judgment

In addition to the parties' class certification cross-motions, FedEx moves for summary judgment against Plaintiffs on their WHL, contract, and implied covenant claims.  First, FedEx argues that Plaintiffs cannot maintain a claim under the WHL, a minimum wage statute, because the record indicates that Plaintiffs were paid well above the statutory minimum wage, even if one factored uncompensated work into the equation.  Next, FedEx argues that Plaintiffs' contract claim fails for lack of consideration, because the alleged contractual duty breached—payment of wages in accordance with New Jersey law—is a preexisting legal duty.  In the absence of a valid contract claim, FedEx further contends that Plaintiffs cannot maintain a claim for breach of the implied covenant of good faith and fair dealing under New Jersey law.

6

Plaintiffs counter that the WHL permits an implied private right of action to enforce its implementing regulations, including N.J. Admin. Code 12:56-5.1, which requires that "[e]mployees entitled to benefits of the [WHL] shall be paid for all hours worked."  Plaintiffs further respond that genuine issues of material fact exist regarding whether the FedEx offer letters signed by Plaintiffs prior to their employment constituted contracts, and whether FedEx's asserted conduct of encouraging Plaintiffs to complete unpaid work breached the promised hourly rates contained in their respective offer letters.

II.     CLASS CERTIFICATION

*A.  The Class Certification Standard Under Rule 23*

A federal court may only certify an action for class litigation if it concludes, after a "rigorous analysis," that the party seeking class certification has satisfied all of the prerequisites of Rule 23.  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2009) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997); *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006)).  "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence."  *Hydrogen Peroxide*, 552 F.3d at 320.  In this regard, "the requirements set out in Rule 23 are not mere pleading rules."  *Id.* at 316.  Rather, the class certification inquiry "requires a thorough examination of the factual and legal allegations."  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 166 (3d Cir. 2001).  "An overlap between a class certification requirement and the merits of a claim is no reason to decline to resolve relevant disputes when necessary to determine whether a class certification requirement is met."  *Hydrogen Peroxide*, 552 F.3d at 316.

7

Plaintiffs ask this Court to employ a lenient class certification standard that both presumes the Complaint's substantive allegations to be true and favors class certification in doubtful cases.  Plaintiffs invoke the Supreme Court's decision in *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 177–78 (1974), where the Court observed that Rule 23 does not authorize a court "to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action," for the principle that a court should not explore the merits of a claim during the class certification inquiry.  Plaintiffs rely on the Third Circuit's decisions in *Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) and *Kahan v. Rosenstiel*, 424 F.2d 161, 169 (3d Cir. 1970) for the latter contention that doubtful cases should be resolved in favor of class certification.  (Pls.' Class Certif. Br. at 7–8.)  However, the Court agrees with FedEx that Plaintiffs' lenient standard misstates the prevailing Third Circuit class certification standard.  Indeed, the Third Circuit rejected both of Plaintiffs' contentions in *Hydrogen Peroxide*, 552 F.3d at 316–17 & n.18, 321–22.[7]

With regard to the *Eisen* Court's suggestion that Rule 23 does not authorize a preliminary merits inquiry, 417 U.S. at 177, the Third Circuit in *Hydrogen Peroxide* explained that this statement was at odds with prior and subsequent Supreme Court decisions that recognized that "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Hydrogen Peroxide*, 552 F.3d at 317

---

[7]The Court notes that Plaintiffs also rely on the New Jersey Supreme Court's decision in *Iliadis v. Wal-Mart Stores, Inc.*, which found class certification warranted under New Jersey's class certification rule for a putative class of hourly Wal-Mart employees alleging that they were required to perform unpaid work in violation of New Jersey law and contract.  191 N.J. 88, 121 (2007).  Yet, the *Iliadis* court's application of the New Jersey rule is not binding on this Court's application of Federal Rule of Civil Procedure 23, and the Court finds *Iliadis* of minimal persuasive value in light of federal authority concerning Rule 23.

(quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 476 (1978)) (internal quotation marks

omitted); *see also Falcon*, 457 U.S. at 160–61 (explaining that "actual, not presumed,

conformance with Rule 23(a) remains . . . indispensable," and instructing courts to conduct a

"rigorous" Rule 23 analysis).  Previously, our Circuit explained in *Newton* that the circumstances

of *Eisen* support a narrow reading of its holding, because the preliminary merits inquiry

encountered by the *Eisen* Court involved a district court's decision, based on its determination

that the plaintiff was more likely to succeed on the merits of his claim, to shift the cost of

notifying class members to the defendant.  *Newton*, 259 F.3d at 166.  Accordingly, our Circuit

has determined that "*Eisen* is best understood to preclude only a merits inquiry that is not

necessary to determine a Rule 23 requirement."  *Hydrogen Peroxide*, 552 F.3d at 317 (citing

*Newton*, 259 F.3d at 166–67).[8]

　　　　With regard to the *Eisenberg* / *Kahan* rule favoring class certification in doubtful cases,

the *Hydrogen Peroxide* court explained that these decisions predated the 2003 amendments to

Rule 23 that "reject[ed] tentative decisions on certification and encourage[d] development of a

record sufficient for informed analysis."  *Hydrogen Peroxide*, 552 F.3d at 321 (citing Fed. R.

Civ. P. 23 advisory committee's note, 2003 Amendments ("A court that is not satisfied that the

---

[8] Although it appears the Third Circuit briefly endorsed Plaintiffs' preferred reading of
*Eisen* in *Chiang v. Veneman*, 385 F.3d 256, 262 (3d Cir. 2004), the *Hydrogen Peroxide* court
found *Chiang* incompatible with prior Circuit decisions such as *Newton*, and thus deemed this
part of *Chiang*'s ruling to not have precedential value.  *Hydrogen Peroxide*, 552 F.3d at 318
n.18.  *Hydrogen Peroxide* also recognized that the Courts of Appeals for the First, Second,
Fourth, Fifth, and Seventh Circuits have similarly construed *Eisen* not to preclude consideration
of the merits to the extent necessary to make Rule 23 findings.  552 F.3d at 317 n.17 (citing *In re
New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 24 (1st Cir. 2008); *In re Initial
Pub. Offering Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006); *Gariety v. Grant Thornton, LLP*, 368
F.3d 356, 366 (4th Cir. 2004); *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d
261, 268 (5th Cir. 2007); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001)).

requirements of Rule 23 have been met should refuse certification until they have been met.")).

Accordingly, the Third Circuit has instructed that courts "should not suppress 'doubt' as to

whether a Rule 23 requirement is met—no matter the area of substantive law." *Id.*; *see also In re

Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 600 n.14 (3d Cir. 2009).  Consequently, this

Court must apply the "rigorous analysis" articulated in *Hydrogen Peroxide*.

Turning to the threshold requirements for class certification under Rule 23, Plaintiffs

must satisfy both the conjunctive requirements of subpart (a) and one of the requirements of

subpart (b).  Fed. R. Civ. P. 23; *Schering-Plough*, 589 F.3d at 596.  The Supreme Court

succinctly described the Rule 23(a) requirements applicable to all class actions in *Amchem

Products, Inc. v. Windsor*, 521 U.S. at 613: "(1) numerosity (a 'class [so large] that joinder of all

members is impracticable'); (2) commonality ('questions of law or fact common to the class');

(3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy

of representation (representatives 'will fairly and adequately protect the interests of the class')."

Because Plaintiffs seek certification under Rule 23(b)(3), they must demonstrate the

predominance of common questions of law and fact and the superiority of class litigation to other

forms of litigation.[9]  The predominance requirement of Rule 23(b)(3) "'tests whether proposed

classes are sufficiently cohesive to warrant adjudication by representation,'" and is a "far more

demanding" requirement than the commonality requirement of Rule 23(a).  *Hydrogen Peroxide*,

552 F.3d at 311 (quoting *Amchem*, 521 U.S. at 623–24).  To assist with the determination of

_____

[9]Rule 23(b)(3) permits class certification where the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

superiority, Rule 23(b)(3) provides the following "pertinent" considerations: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)–(D).

In the present case, FedEx only challenges Plaintiffs' assertion that they share common issues of law and fact with putative class members, and thus challenges the related contention that common issues predominate over individualized inquiries.  The Court will assume numerosity, typicality, and adequacy for purposes of this analysis and direct its attention to the commonality, predominance, and superiority issues.

### B.  Common Questions of Law and Fact

Preliminarily, the Court notes that FedEx argues that the adverse class certification decisions in *Clausnitzer* and *Babineau* preclude Plaintiffs from seeking certification in this case. These cases denied certification of nationwide and statewide classes of hourly FedEx employees alleging the same injuries as Plaintiffs in this case—that FedEx required its employees to perform unpaid work during the gap time between clocking in and registering their start time on their Trackers.  *Clausnitzer*, 248 F.R.D. at 658–63 (denying certification of nationwide class raising contract and quantum meruit claims); *Babineau*, 576 F.3d at 1191–95 (affirming district court's denial of certification for a statewide class bringing contract and quantum meruit claims). The doctrine of issue preclusion, also known as collateral estoppel, "prevents parties from relitigating an issue that has already been actually litigated."  *Peloro v. United States*, 488 F.3d

11

163, 174 (3d Cir. 2007).  Issue preclusion applies where "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment."  *Id.* at 175 (quoting *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995); *In re Graham*, 973 F.2d 1089, 1097 (3d Cir. 1992)).

Although some courts have found that class certification decisions are "sufficiently firm" to constitute a final judgment for purposes of issue preclusion, *e.g.*, *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 767 (7th Cir. 2003), it appears that the Third Circuit came to the opposite conclusion in *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods.* ("*GM II*"), 134 F.3d 133, 146 (3d Cir. 1998).  *GM II* arose from truck owners' emergency applications under the Anti-Injunction Act to enjoin a Louisiana court from approving a settlement between a certified settlement class of truck owners and General Motors.  *GM II*, 134 F.3d at 136–37.  The appellant truck owners in *GM II* argued that the Third Circuit's prior decision in *GM I*, 55 F.3d 768 (3d Cir. 1995) precluded the Louisiana court from certifying a similar class and approving a proposed settlement, because *GM I* vacated a district court's certification of a similar nationwide class and approval of settlement.  *GM II*, 134 F.3d at 136–37.  The *GM II* court denied injunctive relief under the Anti-Injunction Act in part because it determined that "denial of class certification under these circumstances lacks sufficient finality to be entitled to preclusive effect."  *Id.* at 146.

While *GM II* may foreclose according preclusive effect to *Clausnitzer* and *Babineau*, the Court may nonetheless recognize the persuasive authority provided by these cases.  *See Bridgestone*, 333 F.3d at 769 (explaining that, for non-class matters not eligible for issue

12

preclusion, "precedent rather than preclusion is the way one case influences another").  Both decisions are highly relevant because they address class certification requests of hourly FedEx employees, a putative class that included couriers, alleging the same injuries averred by Plaintiffs in this case—that FedEx required them to perform unpaid work during, *inter alia*, the gap time between arrival and their scheduled start.  *Clausnitzer*, 248 F.R.D. at 648–49 & n.1; *Babineau*, 576 F.3d at 1185–86.  Both courts based their decisions in part on FedEx employee testimony regarding non-work activities that occurred during unpaid gap periods.  This evidence, the courts concluded, demonstrated the necessity of conducting individualized inquiries concerning whether a given employee actually performed unpaid work.  *Clausnitzer*, 248 F.R.D. at 661–62; *Babineau*, 576 F.3d at 1192–94.  The *Clausnitzer* court expressed concern that "[p]ermitting these claims to proceed as a class action would deprive FedEx of the ability to explore whether an individual employee was engaged in non-work activities during the gap period," thereby "limit[ing] FedEx's ability to properly defend the claims."  248 F.R.D. at 662.

Although this Court is not bound by the *Clausnitzer* and *Babineau* decisions, especially given the fact-specific context of a class certification inquiry, the similarities between the putative class, the legal claims, and record evidence regarding workers' varying activities during unpaid gap periods make these decisions particularly persuasive.  As in *Clausnitzer* and *Babineau*, the record in this case is rife with concessions by named class members and putative class members that couriers were not required to perform unpaid work, and many in fact did not, during the gap periods.  (*See, e.g.*, Sushko Dep. at 42 (not instructed to arrive early), 47 (not instructed to do preliminary work before start time), 53–54 (received memo in 2000 instructing employees to go to break room if they arrived early); Fundora Dep. at 83 (not instructed to arrive

early), 127 (not instructed to perform unpaid work before shift); Hernandez Dep. at 25, 34 (not

required by manager to perform unpaid work); Merlo Dep. at 48 (not required to clock in before

scheduled shift); Bobenko Dep. at 47 (suggesting that FedEx's unpaid preliminary work policy

was implicit); Dalzell Decl. ¶ 8 (voluntary early arrival, not required to do unpaid work, shared

breakfast with co-workers in break room during gap time, understood gap time was not

compensated); McKay Decl. ¶¶ 7–8 (voluntary early arrival, socialized with co-workers during

gap time, understood gap time was uncompensated).)  This evidence demonstrates, as it did in

*Clausnitzer* and *Babineau*, that the Court would have to undertake individualized factual

inquiries regarding whether particular employees were required to perform unpaid work, whether

they actually did perform unpaid work, and how much unpaid work they performed to resolve

class members WHL, contract, implied covenant, and unjust enrichment claims.  *See Babineau*,

576 F.3d at 1193 ("Even if FedEx policies pressured some employees to arrive early or stay late,

it is clear from the record that other employees did so voluntarily and for purely personal

reasons.").  Without more, the couriers' timecards cannot answer these questions.  *See id.* at 1192

(finding that "the district court reasonably concluded that punch clock records do not provide

common proof of any uncompensated work").

Plaintiffs attempt to distinguish *Clausnitzer* and *Babineau* with four primary arguments.

First, Plaintiffs point out that the putative classes in those cases were broader than the proposed

class in this case, which only includes New Jersey couriers.  Second, Plaintiffs note that the

*Clausnitzer* and *Babineau* plaintiffs raised broader and/or different claims than the New Jersey

law-based claims in this case.  Third, Plaintiffs assert that they have presented a different factual

basis for their contractual relationships with FedEx than did the *Clausnitzer* and *Babineau*

plaintiffs.  Finally, Plaintiffs argue that they have presented common proof not present in
*Clausnitzer* and *Babineau*: the DOT regulation and employee instruction manuals, which permit
the Court to calculate unpaid work by comparing couriers' timecard clock-ins with scheduled
start times.   None of these differences amount to a meaningful distinction.

  With regard to Plaintiffs' first three arguments—different class, different claims, different
contract—the facts that Plaintiffs propose a narrower class, raise only New Jersey state law
claims, and rely on different contract documents are of no moment, because these differences do
not address the deficiency of common issues that led the *Clausnitzer* and *Babineau* courts to
deny class certification.  Although Plaintiffs in this case present a narrower class and have added
two state-law claims that were not present in *Clausnitzer* and *Babineau*—a WHL claim premised
on N.J. Admin. Code § 12:56-5.1, which requires that covered employees be paid for "all hours
worked," and an implied covenant of good faith and fair dealing claim—the fundamental issues
in play have not changed.[10]  Plaintiffs allege that FedEx violated a legal duty by requiring
couriers, who are hourly employees, to perform unpaid work.  It makes no difference for
purposes of this class certification inquiry whether the alleged legal duty arose from a state wage
regulation or a contract, because a plaintiff would need to present individualized proof that
FedEx actually breached a duty in order to prevail on his claims.  Moreover, the unjust
enrichment claim inherently demands an individualized inquiry, because it requires a showing

---

[10]Indeed, Plaintiffs conceded as much when they moved the Judicial Panel on
Multidistrict Litigation to consolidate this case with *Clausnitzer* and *Masterson v. Federal
Express Corp.*, Civ. No. 07-2241 (M.D. Pa.).  (Defs.' Mot. to Den. Class Cert., Ex. E, Br. at 8–9
(noting that the putative nationwide classes in *Clausnitzer* and *Masterson* overlapped with the
putative New Jersey class in this case, and acknowledging that "all three actions assert
comparable allegations against Federal Express Corporation . . . based on the exact same
underlying course of conduct").

that the plaintiff performed services in good faith, that the defendant accepted those services, and that the plaintiff had a reasonable expectation of compensation. *E.g.*, *Starkey, Kelly, Blaney & White v. Estate of Nicolaysen*, 172 N.J. 60, 68 (2002); *cf. Babineau*, 576 F.3d at 1194–95 (finding individualized inquiry necessary to resolve plaintiffs' Florida-law quantum meruit claims).

Meanwhile, the DOT regulation and employee instruction manuals cited by Plaintiffs do not eliminate the need for individualized inquiries regarding which couriers actually worked, and how much work they engaged in, during unpaid gap times.  The Court finds most puzzling Plaintiffs' attempt to use the DOT regulation to hold FedEx strictly liable for all time listed on couriers' timecards, regardless of proof that the couriers actually performed work.  This provision is a highway safety regulation that limits the amount of hours commercial drivers can work during a given period of time, and the Court has no reason to believe that it has any bearing on New Jersey wage laws.  Indeed, the Department of Transportation has issued a regulatory guidance explaining that Federal Motor Carrier Safety Regulations, such as the DOT regulation, "do not address questions of pay."  49 C.F.R. Chapter III, Regulatory Guidance for the Federal Motor Carrier Safety Regulations, 62 Fed. Reg. 16370-01, 16442 (Apr. 4, 1997).  Plaintiffs do not suggest that FedEx informed couriers that wages would be based on the DOT regulation, and Plaintiffs provide no authority for using the DOT regulation's definition of "on-duty time" to determine issues arising under New Jersey wage laws.

The deposition testimony of named Plaintiffs and putative class members in this case amply demonstrates that the resolution of Plaintiffs' unpaid work claims will require individualized inquiries regarding the extent to which specific FedEx couriers were required to

16

work and did work during gap periods.  Because these individual issues of fact predominate over any common issues, class litigation is not superior to other methods of adjudication.  It would not be practicable for this Court to undertake the individualized inquiries necessary for the potential claims of the more than 8,000 New Jersey-based FedEx couriers of this proposed class.  *See* Fed. R. Civ. P. 23(b)(3)(D) (instructing courts to consider "the likely difficulties in managing a class action"); *cf. Clausnitzer*, 248 F.R.D. at 662 ("Engaging in [individualized] inquiries will cause the adjudication of the over 100,000 potential employees' claims to become unmanageable, burdensome, and would unreasonably tax judicial resources.").  Plaintiffs' putative class does not withstand rigorous review under Rule 23.  Accordingly, the Court will deny Plaintiffs' motion for class certification.

III.     SUMMARY JUDGMENT

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811

F.2d 225, 231 (3d Cir. 1987).

FedEx's motion for partial summary judgment challenges the legal bases of Plaintiffs' claims arising under the WHL, contract, and implied covenant of good faith and fair dealing. This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(a) and (d).

*A. WHL Claim*

With regard to Plaintiffs' WHL claim in Count I, FedEx argues that Plaintiffs cannot maintain this claim because the undisputed record demonstrates that Plaintiffs were paid in excess of the minimum wage required by WHL.[11]   The Court understands Plaintiffs to respond with three different rationales for their WHL claim, none of which are based on its minimum wage provision.  First, Plaintiffs contend that FedEx violated a provision of New Jersey's Wage Payment Law (WPL), N.J. Stat. Ann. § 34:11-4.6(b), which requires an employer covered by the act to give its employees prior notice of any change to pay rates.  (Pls.' Resp. Br. at 5.)  Second, FedEx asserts that the WHL permits an implied right of action to enforce one of its implementing regulations, N.J. Admin. Code § 12:56-5.1, which provides that employees covered by the WHL "shall be paid for all hours worked."  (Pls.' Sur-Reply Br. at 2.)  Third, Plaintiffs argue that

---

[11]FedEx argues that this Court should adopt the workweek standard applied by federal courts to the analogous federal minimum wage provisions provided by the Fair Labor Standards Act (FLSA) to interpret the WHL.  *See, e.g.*, *Dove v. Coupe*, 759 F.2d 167, 172 (D.C. Cir. 1985) (applying workweek standard to a claim arising under the FLSA).  The workweek standard, FedEx argues, would require the Court to divide the total wages paid in a given week by the total hours worked, including uncompensated time.  Applying the average of the lowest rates paid to Plaintiffs ($21.33 per hour) and the maximum minimum wage applicable to this time period under the WHL ($7.15 per hour), FedEx concludes that Plaintiffs would have needed to work approximately 120 hours per week to make less than minimum wage under the workweek standard.  (Defs.' Br. at 24.)  While FedEx's logic in this regard seems sound, Plaintiffs do not dispute this portion of FedEx's argument, opting instead to frame their WHL claim on its implementing regulations.  Accordingly, the Court need not determine the appropriate standard for the WHL's minimum wage provision or how that standard applies to the facts of this case.

FedEx failed to pay couriers a minimum "fair wage," as required by N.J. Stat. Ann. § 34:11-56a25.[12]  (*Id.* at 3–4.)  The Court need not address Plaintiffs' first and third arguments, because Plaintiffs did not allude to these theories of their WHL claim anywhere in their Complaint,[13] and they cannot now proceed with such unpled claims.  However, the Court agrees with Plaintiffs that New Jersey law permits an implied cause of action to enforce the regulation invoked in their Complaint, § 12:56-5.1 of the New Jersey Administrative Code.

In making their implied right of action argument, Plaintiffs primarily rely on dicta from the Superior Court of New Jersey, Appellate Division decision in *Winslow v. Corporate Express, Inc.*, 364 N.J. Super. 128 (App. Div. 2003).  Although the *Winslow* court ultimately concluded that N.J. Stat. Ann. § 34:11-4.7 expressly provided for a private right of action to enforce the

---

[12]This provision provides in pertinent part:

> If any employee is paid by an employer less than the minimum fair wage to which such employee is entitled under the provisions of this act or by virtue of a minimum fair wage order such employee may recover in a civil action the full amount of such minimum wage less any amount actually paid to him or her by the employer together with costs and such reasonable attorney's fees as may be allowed by the court . . . .

N.J. Stat. Ann. § 34:11-56a25.  New Jersey law defines "fair wage" as "a wage fairly and reasonably commensurate with the value of the service or class of service rendered and sufficient to meet the minimum cost of living necessary for health."  *Id.* § 34:11-56a1(k).

[13]The only count of Plaintiffs' Complaint referring to the WHL is Count I, which avers the following facts: (1) N.J. Stat. Ann. § 34:11-56(a)(4) requires employers to pay a minimum wage "for 40 hours of working time in any week" and overtime wages for time worked in excess of that amount; (2) N.J. Admin. Code § 12:56-5.1 guarantees that workers covered by the WHL "shall be paid for all hours worked," which N.J. Admin. Code § 12:56-5.2 defines as "[a]ll the time the employee is required to be at his or her place of work or on duty . . . "; and (3) that FedEx "failed to pay Plaintiffs for regular and/or overtime hours worked" and "required Plaintiffs to work 'off the clock.'"  (Compl. ¶¶ 43–47.)  Plaintiffs' Complaint makes no mention of the WPL's wage-change notice requirement, N.J. Stat. Ann. § 34:11-4.6(b), or the fair wage requirement in N.J. Stat. Ann. § 34:11-56a25, and the factual allegations supporting their WHL claim do not implicitly invoke these protections.

19

wage-change notice provision in § 34:11-4.6(b), the court suggested that the WPL would have

permitted an implied right of action to enforce this provision even in the absence of § 34:11-4.7.

*Winslow*, 364 N.J. Super. at 137–38.  The *Winslow* court explained that New Jersey courts "have

readily found an implied private right of action in statutes enacted to protect employees from

wrongful conduct by employers," noting that the Appellate Division had previously recognized

implied private rights of action under the New Jersey Law Against Discrimination (NJLAD) and

N.J. Stat. Ann. § 34:15-39.1–39.3, which prohibits an employer from retaliating against an

employee on the basis of an employee's attempt to claim workmen's compensation benefits.  *Id.*

at 137 (citing *Peper v. Princeton Univ. Bd. of Trs.*, 151 N.J. Super. 15, 23 (App. Div. 1977)

(NJLAD); *Lally v. Copygraphics*, 173 N.J. Super. 162, 173–82 (App. Div. 1980) (workmen's

compensation anti-retaliation statute), *aff'd*, 85 N.J. 668, 670–71 (1981)).  The *Winslow* court

also relied on a trial court's decision in *Mulford v. Computer Leasing, Inc.*, which inferred a

private right of action from the WPL because "[e]mployees are the obvious special beneficiaries

of the statute; and to allow the civil action will plainly further its purpose."  *Winslow*, 364 N.J.

Super. at 137 (quoting *Mulford v. Computer Leasing, Inc.*, 334 N.J. Super. 385, 393–94 (Law

Div. 1999)).  Federal courts in this District and in the Eastern District of Pennsylvania have

followed the lead of *Mulford* and *Winslow* by recognizing other implied private rights of action

under the WPL.  *Kronick v. bebe Stores, Inc.*, No. 07-4514, 2008 WL 4509610, at *3–4 (D.N.J.

Sept. 29, 2008); *Sternadori v. SCS Healthcare Mktg., Inc.*, No. 05-3679, 2007 WL 710298, at *6

(E.D. Pa. Mar. 6, 2007).

  FedEx argues that Plaintiffs' reliance on *Winslow* is misplaced, noting that the WPL

serves a different legislative purpose than the WHL.  While the WPL and WHL protect workers'

rights in different ways, one need only consult the WHL's express statement of legislative purpose to see that the *Mulford* court's conclusion about the WPL is no less true about the WHL: employees are the obvious special beneficiaries of the statute, and a civil action furthers the statute's remedial purpose.  *See* N.J. Stat. Ann. § 34:11-56a ("It is declared to be the public policy of this State to establish a minimum wage level for workers in order to safeguard their health, efficiency, and general well-being and to protect them as well as their employers from the effects of serious and unfair competition . . . .").  In light of this remedial purpose, the New Jersey Supreme Court has instructed courts to give the WHL "a liberal construction."  *N.J. Dep't of Labor v. Pepsi-Cola Co.*, 170 N.J. 59, 62 (2001) (per curiam).

Plaintiffs in this case allege that FedEx violated N.J. Admin. Code § 12:56-5.1, which guarantees that protected employees "shall be paid for all hours worked."  The New Jersey Administrative Code provides that violation of the WHL's implementing regulations constitutes a violation of the WHL.  N.J. Admin. Code § 12:56-1.2(a)(8).  The Administrative Code further provides a judicially manageable standard for adjudicating Plaintiffs' § 12:56-5.1 claim, because it defines "hours worked" in § 12:56-5.2 to consist of "[a]ll the time the employee is required to be at his or her place of work or on duty."  At least one court in this District has extended the *Mulford / Winslow* rationale to allow a private right of action under the administrative provisions of the WHL, *Kronick*, 2008 WL 4509610, at *7, and this Court is aware of no precedent limiting the *Mulford / Winslow* line of cases to their particular applications.

In light of the WHL's broad remedial purpose, the judicially manageable standard supplied by the WHL's implementing regulations, and the guidance provided by the *Mulford / Winslow* line of cases, this Court agrees with the *Kronick* court that the WHL permits a private

right of action to enforce § 12:56-5.1 of the Administrative Code.  Accordingly, the Court will

deny FedEx's motion to the extent that it seeks summary judgment with regard to Plaintiffs'

WHL claim in Count I.  However, courts applying *Mulford / Winslow* to recognize implied

causes of action have stressed the limited nature of these remedies.  Such implied causes of

action arising under New Jersey's employee protection statutes and their implementing

regulations are limited to the wages owed under the governing provisions; statutory and punitive

damages are not recoverable.  *Kronick*, 2008 WL 4509610, at *7; *Sternadori*, 2007 WL 710298,

at *6 .  The Court sees no reason to depart from this sound rule.  Thus, if Plaintiffs prevail on this

claim, their remedy will be limited to wages due under § 12:56-5.1.

### B.  Express and Implied Contract

Turning next to FedEx's challenge to Plaintiffs' contract claim, the Court agrees with

FedEx that Plaintiffs' contract claim fails as a matter of law for lack of consideration.  Although

New Jersey contract law provides that courts generally "do not inquire into the adequacy of

consideration in determining whether to enforce a contract," *Seaview Orthopaedics ex rel.*

*Fleming v. Nat'l Healthcare*, 366 N.J. Super. 501, 508–09 (App. Div. 2004), it is well

established that an agreement to perform a preexisting legal duty cannot serve as consideration

for a contract, *e.g.*, *Berel Co. v. Sencit F/G McKinley Assocs.*, 710 F. Supp. 530, 536 (D.N.J.

1989), Restatement (Second) of Contracts § 73 & Cmt. (1981).  The absence of consideration

renders the purported contract unenforceable.  *Continental Bank of Pa. v. Barclay Riding*

*Academy, Inc.*, 93 N.J. 153, 170 (1983).  Therefore, "[c]ontractual agreements to comply with

preexisting legal duties are unenforceable." *Hyman v. WM Fin. Servs., Inc.*, No. 07-3497, 2008

WL 1924879, at *3 (D.N.J. Apr. 29, 2008).

Here, the Complaint clearly demonstrates that Plaintiffs seek to enforce FedEx's alleged contractual promise to pay Plaintiffs wages in accordance with New Jersey law.  Count II specifically states: "Defendants expressly and/or impliedly contracted with Plaintiffs that they would pay Plaintiffs for regular and overtime hours worked as prescribed by New Jersey Law." (Compl. ¶ 50.)[14]  The preexisting legal duty rule "is confined to a duty for which any remedy ordinarily allowed by the law for that kind of duty is still available."  Restatement (Second) of Contracts § 73 Cmt. (e) (1981).  On its face, Count II of the Complaint seeks nothing more to enforce FedEx's obligation to pay wages in accordance with New Jersey law.  As previously noted, Plaintiffs have recourse to a legal remedy to enforce FedEx's compliance with the WHL and its implementing regulation.  FedEx thus had a preexisting legal duty to pay wages in accordance with New Jersey wage laws, and Plaintiffs' contract claim fails as a matter of law for lack of consideration.  *Cf. Hyman*, 2008 WL 1924879, at *3 (finding purported contract "to pay plaintiffs . . . all amounts due to them in compliance with state and/or federal law" unenforceable for lack of consideration and dismissing the claim).  Consequently, the Court will grant summary judgment in favor of FedEx on Count II.

---

[14]Plaintiffs attempt to refashion their contract claim as one seeking to enforce FedEx's alleged promises "to pay Plaintiffs an agreed-upon hourly rate."  (Pls.' Resp. Br. at 3; Pls.' Sur-Reply Br. at 1.)  However, this argument is belied by Plaintiffs' concession in their response brief that FedEx "correctly" characterized their contract claim as one based on FedEx's alleged contract "to pay [Plaintiffs] for regular and overtime hours worked as prescribed by New Jersey law."  (Pls.' Resp. Br. at 2.)  Furthermore, Plaintiffs did not present this new contract theory in their pleadings.  Plaintiffs suggest that they did plead this contract theory when they included it in their class certification brief (Pls.' Sur-Reply Br. at 1), but Plaintiffs' reliance on their class certification brief is misplaced.  A motion brief is not a vehicle for amending a party's pleadings midstream.

C.  *Implied Covenant of Good Faith and Fair Dealing*

This Court's ruling with regard to Plaintiffs' contract claim also resolves their implied covenant claim in Count III.  "In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing."  *Noye v. Hoffmann-La Roche Inc.*, 238 N.J. Super. 430, 434 (App. Div. 1990); *see also Brunner v. Abex Corp.*, 661 F. Supp. 1351, 1356 (D.N.J. 1986); *McQuitty v. General Dynamics Corp.*, 204 N.J. Super. 514, 520 (App. Div. 1985).  The only contract averred in the Complaint consists of FedEx's express or implied promise to "pay Plaintiffs for regular and overtime hours worked as prescribed by New Jersey Law."  (Compl. ¶ 50.)  As noted above, this claim fails as a matter of law for lack of consideration.  Without a valid contract, this Court has no basis upon which to imply a duty of good faith and fair dealing.  *See Holodak v. Rullo*, 210 F. App'x 147, 152 (3d Cir. 2006).  Accordingly, this Court will grant summary judgment in favor of FedEx on Count III.

IV.     CONCLUSION

For the aforementioned reasons, the Court will deny Plaintiffs' motion for class certification, and Court will grant Defendants' motion for partial summary judgment as to Counts II and III of the Complaint.  Counts I and IV remain.  An appropriate form of order accompanies this Memorandum Opinion.


Dated: June 7, 2010

　　　　　　　　　　　　　　　　　　　　　/s/ Garrett E. Brown, Jr.　　　　　
　　　　　　　　　　　　　　　　　　　GARRETT E. BROWN, JR., U.S.D.J.